# The Attorney General's Authority to Represent the Roosevelt Campobello International Park Commission

Under the international agreement creating the Roosevelt Campobello International Park Commission and its implementing legislation, the Attorney General may provide free legal representation to the Commission. However, he is under no obligation to do so, particularly where a conflict of interest would make questionable the appropriateness of such representation.

The Attorney General's statutory obligation to "supervise and control" litigation of the Commission in courts of the United States does not require him to conduct such litigation, or retain private counsel on behalf of the Commission, any more than it empowers him to control access by this international body to U.S. courts. It only means that when the Attorney General does conduct or finance litigation of the Commission, he must retain supervision and control over it.

In cases where the Commission is suing an agency of the United States, it is appropriate for the Department to refuse the Commission's request for representation. The Department also may withdraw from representation of the Commission that has already been undertaken, as long as such withdrawal is accomplished in accordance with applicable American Bar Association standards.

July 6, 1981

## MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, LAND AND NATURAL RESOURCES DIVISION

This responds to your request for an opinion clarifying the Attorney General's authority and responsibility to provide legal representation to the Roosevelt Campobello International Park Commission. You have expressed special concern about pending and prospective litigation by the Commission against the United States government. Our advice can be summarized as follows:

(1) The Attorney General is under no legal obligation to conduct or finance new litigation brought by or against the Commission.

(2) The Attorney General does have the authority, subject to his other responsibilities, to conduct or finance litigation on behalf of the Commission.

(3) The Attorney General should not attempt to prevent the Commission from using its own funds to sue the United States. However, the President may prevent the initiation of such suits in the future by directing the United States members of the Commission to vote to oppose suits against the United States.

(4) Subject to the terms of any binding contractual commitments, the Department may withdraw from financing the Commission's pending litigation against the United States, but we recommend that it not do so without taking reasonable steps to avoid prejudice to the Commission.

## Discussion

The Roosevelt Campobello International Park Commission was established pursuant to an agreement between the United States and Canada to administer the estate once owned by President Franklin Roosevelt as an international park. Agreement Between the Government of the United States of America and the Government of Canada Relating to the Establishment of the Roosevelt Campobello International Park, Jan. 22, 1964, United States-Canada, 15 U.S.T. 1504, T.I.A.S. No. 5631 (1964) [hereinafter cited as Agreement]. The Agreement provides that the Commission shall be composed of six members, three Americans and three Canadians, and that the affirmative vote of at least two members from each country is required for any decision to be taken by the Commission. Agreement, Art. 3, at 1505. It also provides that the Commission shall have "juridical personality and all powers and capacity necessary or appropriate for the purpose of performing its functions" including the powers and capacity to "sue or be sued in either Canada or the United States." Agreement, Art. 2, at 1505. In addition, the Agreement provides that the costs of operating and maintaining the Park shall be shared equally by the governments of the United States and Canada Agreement, Art. 11, at 1507, and that "arrangements" may be made with the competent agencies of both governments for rendering, without reimbursement, such services as the Commission may request for the orderly development, maintenance and operation of the Park. Agreement, Art. 9, at 1507.

The legislation implementing the Agreement which was adopted by Congress reiterates the essence of the Agreement. 16 U.S.C. §§ 1101–1113. Among other things, it provides that the American members of the Commission shall be appointed by the President and hold office at his pleasure. 16 U.S.C. § 1104(a). The "functions" of the Commission are to accept title to the estate, to take the measures necessary to restore the property to its original condition, and "to administer" the Park "as a memorial." 16 U.S.C. § 1102. In describing the powers of

219

the Commission, the statute provides that the Commission shall have "juridical personality and all powers and capacity necessary or appropriate for the purpose of performing its functions" including the power and capacity

> to sue or be sued, complain and defend, implead and be impleaded, in any United States district court. *In such suits, the Attorney General shall supervise and control the litigation.*

16 U.S.C. § 1103(c) (emphasis added).[1] The statute also enumerates the Commission's power

> to obtain without reimbursements, for use either in the United States or Canada, legal, engineering, architectural, accounting, financial, maintenance, and other services, whether by assignment, detail, or otherwise, from competent agencies in the United States or in Canada, by arrangements with such agencies.

16 U.S.C. § 1103(j). In recognition of this government's responsibility to share equally in the costs of developing and operating the Park, the statute also authorizes the appropriation of such sums as may be necessary to fulfill our obligations under the Agreement. 16 U.S.C. § 1113.[2]

*Obligation and authority to provide legal services.* Both the Agreement and the United States legislation contemplate that the Commission may make "arrangements" with United States agencies for free services, and the statute makes it plain that legal services are among the types of free services contemplated. *See* 16 U.S.C. § 1103(j). We do not believe that the statute imposes an obligation on any agency of the United States to provide free legal services to the Commission, particularly in litigation against the United States. Although we recognize an intention in these provisions that government agencies cooperate with the Commission when feasible, we do not believe that § 1103(j) or the Agreement should be read to create an obligation for agencies of either government to satisfy every request of the Commission.[3] Rather, we read these provisions as a grant of authority to government agencies to cooperate with the Commission and as an endorsement of such co-

---

[1] The italicized language is a substantive addition to the parallel provision in the Agreement. The Canadian implementing legislation does not contain a similar provision requiring supervision or control of Commission litigation in Canada. Roosevelt Campobello International Park Commission Act, 1964, ch. 19, 1964–65 Can. Stat. 135.

[2] There have been annual appropriations to the Department of the Interior for this purpose. *See* Pub. L. No. 96–514, 94 Stat 2957; Pub. L No. 96–126, 93 Stat. 954; Pub. L. No. 95–465, 92 Stat. 1279; Pub. L. No. 95–74, 91 Stat. 285; Pub. L. No. 94–373, 90 Stat. 1043; Pub. L. No. 94–165, 89 Stat. 977; Pub. L. No. 93–120, 87 Stat. 429.

[3] The statement of C P. Montgomery, Assistant Director, National Park Service, Department of the Interior, before the Senate Foreign Relations Committee, supports our view that these provisions should be read to authorize "cooperation" from United States agencies. *See* S. Rep No. 1097, 88th Cong., 2d Sess., 9 (1964)

220

operation, whenever such agencies, in the exercise of their discretion, believe that such cooperation is lawful and otherwise appropriate.[4]

Similarly, we do not find an obligation to represent the Commission in the language of § 1102(c) of the statute concerning the Attorney General's supervision and control of Commission litigation. As we see it, the supervision and control of litigation is not necessarily the same as actually conducting the litigation. Although the two functions may be performed by the same person or entity, this need not be the case. In the private sector, for example, it is not uncommon for the general counsel of a corporation to supervise and control corporate litigation, while outside counsel actually conducts the litigation. In the government context, the authority to conduct and to supervise litigation is separately delineated, *see* 28 U.S.C. §§ 516, 519, although both functions most frequently reside in the Department of Justice. There are situations, however, where Congress has given another Department the authority to conduct litigation, subject to the supervision and control of the Attorney General. *See, e.g.,* 42 U.S.C. §§ 7171(i), 7192(c) (involving Department of Energy litigation). In light of this distinction, we are persuaded that Congress would have used different, and more explicit, language in § 1102(c) if it intended to require the Attorney General to conduct litigation or retain private counsel on behalf of the Commission.

Having concluded that § 1102(c) does not create an obligation to conduct litigation for the Commission, we must nonetheless ascribe some intended meaning to the mandate to "supervise and control" the Commission's litigation. Reading broadly, the term could imply that the Attorney General may prevent the Commission from asserting particular positions or that he may deny the Commission access to federal district courts altogether.[5] Such a construction, however, would give this government more unilateral power than can be found in the Agreement [6] and would tend to conflict with Article 2 of the Agreement which provides that the Commission shall have "juridical personality" and be empowered to "sue and be sued" in United States district courts.

[4] As we indicated in our October 10, 1978, opinion regarding the representation of Campobello, the Attorney General's authority to conduct litigation includes the authority to retain private counsel at government expense when a conflict of interest prevents direct representation

[5] We have not been asked to consider whether the particular litigation in which the Commission is now engaged is "necessary or appropriate for the purpose of performing its functions." 16 U.S.C. § 1103. Of course, this government may express its views on that question through its representatives on the Commission.

[6] Under the Agreement, the power of one government to control the positions of the Commission lies in the exercise of its voting rights. *See* Article 3. Since the United States members of the Commission serve at the pleasure of the President, the President could prevent the problem of litigation against the United States by directing the United States members to vote against the initiation of such suits. However, once begun, the United States vote would not be sufficient to terminate the litigation without the support of two Canadian votes

It is an established principle of construction that a statute will not be read to modify or abrogate obligations under an international agreement without a clear expression by Congress that such was its purpose. *See Cook* v. *United States,* 288 U.S. 102 (1933). Thus, without a clear expression by Congress that the United States enabling legislation was intended to modify the international Agreement by giving a single United States official the power to limit the Commission's access to the United States courts, we would be disinclined to read § 1103(c) to confer that power. Since nothing in the enabling legislation or its legislative history indicates such an intent,[7] a more narrow construction of the term "supervise and control" seems appropriate.

As mentioned previously, Congress clearly anticipated that the Commission could arrange for free legal services from the Justice Department. We think that § 1103 should be read to mean that when the United States government does provide representation for the Commission in federal court, the Attorney General must maintain control of that litigation. Supervision and control of the litigation in these circumstances would be essential to maintain the integrity of the government's legal position before the federal courts. Section 1103 may also be read to require that among federal agencies, only the Justice Department may conduct litigation for the Commission.

In sum, we conclude that neither the international agreement nor the implementing legislation require the Department of Justice to provide legal services to the Commission. In cases where the Commission is suing an agency of the United States, it is especially appropriate for the Department to refuse the Commission's request for representation. Furthermore, in light of our conclusion that there is no underlying obligation to provide representation, we believe that the Department also may withdraw its personnel or funds from representation of the Commission that has already been undertaken. However, as discussed below, the Department should ensure that any withdrawal is accomplished in an appropriate and reasonable manner.

*Withdrawal from litigation.* The Justice Department applies the Code of Professional Responsibility of the American Bar Association (ABA Code) to its legal activities and personnel. *See* 28 CFR 45.735-1(b). The Code generally discourages lawyers from withdrawing from employment absent good cause. *See* ABA Code DR 2–110(C). We believe that the Department can make a showing of good cause for withdrawal under DR 2–110(C)(6) at least with respect to Commission litigation that involves the assertion of positions that are contrary to those of the United States, for which Congress has made no specific appropriation to retain private counsel. This position would be enhanced in cases where the litigation may be arguably beyond the scope of the Commis-

---

[7] The legislative history gives virtually no attention to the question of litigation authority or the extent of the Attorney General's mandate to "supervise and control" Commission litigation.

sion's responsibilities. Although the ABA standards may not be applicable to a situation where the Department wants to withdraw from financing rather than conducting Commission litigation, we would nonetheless advise you to use the good cause standard as a guide for your conduct in this situation. Cf. ABA Code DR 5-107(B) (involving the influence of professional services by third parties who pay legal fees on behalf of the client).

Should you determine that there is good cause and that it is otherwise appropriate [8] to withdraw from representing the Commission in a given case, the ABA Code provides guidance on the manner of withdrawal. DR 2-110(A)(2) provides that

> [A] lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.

We are aware from the materials you provided that the Department has entered into "contracts" and exchanged other correspondence with counsel retained on behalf of the Commission. It does not appear, from our quick review of these materials, that there could be any construction of these "contracts" that would bind the Department to pay the private lawyer beyond the monetary ceiling set for the particular matter or the end of the fiscal year—whichever occurs sooner. However, we think that you are in a better position to assess the Department's "contractual" obligations as an initial matter. In any event, in light of our other advice, you may not be prepared to withdraw financial support for the employment of private counsel in particular cases before the end of this fiscal year. Accordingly, we have not addressed the contractual issue at this time. If it becomes necessary to do this in the future, we would be pleased to assist you.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[8] It may be advisable as a matter of policy to consult with the State Department and the National Park Service before undertaking a withdrawal from Commission litigation.